UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BIGFOOT 4x4, INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> The Individuals, Corporations, Limited ) <br> Liability Companies, Partnerships, and ) <br> Unincorporated Associations Identified on ) <br> Schedule A Hereto ) <br> ) <br> Defendants. ) | Case No.: 1:21-cv-02600 <br><br> Honorable Martha M. Pacold <br><br> **PUBLIC REDACTED VERSION** |

**DEFENDANTS MEMORANDUM IN SUPPORT OF MOTION UNDER RULE 65 TO DISSOLVE *EX PARTE* TEMPORARY RESTRAINING ORDER/EMERGENCY OPPOSITION TO MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

**I. INTRODUCTION**

In its December 5, 2022 Order granting the *ex parte* TRO, this Court stated that "[i]f any defendant appears and objects, the court will revisit the asset freeze and joinder." (ECF No. 20.) The three Daoen Defendants that presume to be named in this Schedule A case[1] have requested to be served multiple times and made an appearance, but Bigfoot refused for weeks to both serve the complaint and provide information filed under seal—information incorporated by reference into the preliminary injunction motion filed today (December 28). Bigfoot finally served some of the requested documents today but has still failed to serve important sealed information relevant to its claims. Though the Daoen Defendants do not have access to these confidential filings, they have appeared, are objecting to the TRO, and opposing the preliminary injunction motion because their ***entire Amazon businesses have been frozen***, despite not infringing the Bigfoot trademarks and despite the alleged infringing products being a small fraction of that Amazon business.

Operating under this veil of secrecy, Bigfoot secured *ex parte* relief against dozens of accused online sellers, enjoining them and temporarily freezing their assets without any notice or opportunity to be heard. Bigfoot made generalized allegations—most of them "upon information and belief"—that all the accused sellers are fly-by-night counterfeiters because they are based in China. But Bigfoot swept the Daoen Defendants' legitimate online businesses where they sell lawful, after-market replacement parts for use with Bigfoot RC vehicles into this fray. And these products have been listed on Amazon ***since 2017***.

---

[1] The Daoen Defendants are Defendant No. 99, Shenzhen Daoen Model Technology Co., Ltd. ("Daoen"), Defendant No. 77, Shenzhen Aoxinfa Technology Co., Ltd. ("Aoxinfa"), and Defendant No. 119, Shenzhen Tianqinli Technology Co., Ltd. ("Tianqinli").

1

Now, Bigfoot seeks to convert the *ex parte* TRO into a preliminary injunction, having delayed weeks to serve the Daoen Defendants and still refusing to provide access to confidential parts of the record. This is remarkable. The Court authorized email service over three weeks ago and the Daoen Defendants told Bigfoot counsel that they were represented and requested service multiple times over the last few weeks. And although the Daoen Defendants' counsel appeared, it cannot access these sealed documents through the ECF—Bigfoot must serve them. Without these sealed documents, which are incorporated into Bigfoot's preliminary injunction motion, proper notice cannot be affected, and Bigfoot failed to provide notice before seeking injunctive relief. And instead of responding to the Daoen Defendants' multiple emails explaining their clear fair use, Bigfoot has now twice replied with a curt response: "As soon as we receive [the Amazon account information], we will provide you with a settlement demand." These responses reveal Bigfoot's true motive: knowing the Daoen Defendants' considerable assets are frozen, Bigfoot is trying to force a settlement by indefinitely extending the injunction. Thus, the Daoen Defendants respectfully request that the Court dissolve the TRO, deny Bigfoot's motion to summarily enter a preliminary injunction, and if needed grant the Daoen Defendants supplemental briefing on the preliminary injunction once they are finally served and provided all sealed documents.

## II.  FACTUAL BACKGROUND

On December 2, 2022, Bigfoot filed its Complaint (ECF No. 1) and an *ex parte* motion for a TRO under the Court's Schedule A practice asking this Court to (1) enjoin dozens of defendants from making and selling counterfeit Bigfoot products, (2) order a transfer of the defendants' domain names, (3) order an asset restraint, (4), expedite discovery, and (5) allow email service on the defendants. (ECF No. 10.) Bigfoot claimed that the defendants allegedly sell *counterfeit* versions of Bigfoot-branded products through an interconnected web of deceptive

2

online shops and, if given proper notice of this proceeding, would disappear and "fraudulently transfer financial assets to overseas accounts before a restraint is ordered." (ECF No. 1, ¶¶ 2, 3, 4, 17–27; ECF No. 11, PageID #80.) On December 5, 2022, this Court granted Bigfoot's motion, setting a bond at $10,000 and noting that "[i]f any defendant appears and objects, the court will revisit the asset freeze and joinder." (ECF No. 20.)

Daoen, a Chinese company based in Shenzhen, was established in 2015 to manufacture and sell a broad array of high-quality remote-controlled ("RC") vehicle after-market replacement parts, including RC car headlights, spark plugs, antenna tubes, wheels, and tires. In 2016 Daoen began selling its replacement parts directly to consumers under its Amazon storefront, HobbyPark. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Daoen replacement parts are compatible with a variety of branded RC vehicles, including Bigfoot RC vehicles.

It is important for Daoen's customers to know which RC vehicle its parts fit on. Without it, Daoen's customers would be left guessing. The Daoen Defendants provide this information on their Amazon listings, stating: "Hobbypark Height 6.3(160mm) 12mm Hex RC Monster Truck Tires and Wheels Foam Inserts **for 1/10 Scale RC Trucks Bigfoot**, Set of 4." (Ex. B, Sun Decl., ¶¶ 6–8 (emphasis added), Ex. C, Xie Decl. ¶¶ 6–8, Ex. D, Tang Decl., ¶¶ 6–8.)



The Daoen Defendants generate significant revenue from selling an offering of replacement parts through their Amazon storefronts, including the parts at issue—███████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████ Yet, since December 10, the Daoen Defendants have been unable to withdraw *any* money from their Amazon accounts, irrespective of what products generated those sales. (Ex. B, ¶ 11, Ex. C, ¶ 10, Ex. D, ¶ 10.)

On December 10, 2022, the Daoen Defendants, each received a message from Amazon informing them that some of their listings and disbursements from their seller accounts were placed on hold—the first implication that they might be defendants in this case.

4

On December 14 Bigfoot moved to extend the TRO another 14 days to January 2 to "provide additional time for Amazon, eBay, Fruugo, PayPal, Walmart and Wish to comply with the terms" of the TRO. (ECF No. 23.) The Court granted Bigfoot's motion. (ECF No. 24.)

On December 16, the Daoen Defendants counsel emailed Bigfoot counsel requesting copies of the sealed documents filed with the Court (including for example, ECF No. 7 and ECF Nos. 12–16). (Ex. A, Liu Decl., Ex. A-1.) Bigfoot counsel responded asking for the account numbers and email addresses associated with the Daoen Defendants but refused to provide the requested documents. (*Id.*) The Daoen Defendants replied that same day and again the next day. (*Id.*) Bigfoot counsel then simply stated that they are "waiting to receive the account and sales information from the platform" and that "[a]s soon as we receive this information, we will provide you with a settlement demand." (*Id.*) Despite having notice of the Daoen email and counsel's information, Bigfoot still did not serve the Complaint or provide the sealed documents. On December 19, counsel for the Daoen Defendants replied, explaining that they should be provided the sealed documents given that their assets are frozen and further explaining that the Daoen Defendants are legally selling replacement after-market tires and wheels for the Bigfoot RC vehicles. (*Id.*) Receiving no response, the Daoen Defendants again followed up with another email on December 22, again requesting the sealed information. (*Id.*) Once again, Bigfoot counsel simply remarked that it was "still waiting to receive the account information from Amazon" and that "[a]s soon as we receive this information, we will provide you with a settlement demand" again refusing to provide the sealed filings. (*Id.*)

On December 28, Bigfoot moved to convert the TRO to a preliminary injunction on the same grounds set forth in its Memorandum in Support of Temporary Restraining Order. (ECF No. 26.) Also, despite this Court allowing email service on December 5 and knowing since

December 16 that the Daoen Defendants are represented, Bigfoot waited until *after* it filed its Preliminary Injunction Motion at 4:49 PM CST to serve the some of its filings on the Daoen Defendants. (Ex. A-2.) But Bigfoot still did not serve or provide several important sealed documents, including a declaration with purported evidence that was attached to its brief in support of its TRO motion and was incorporated by reference into its PI Motion (see fn. 2). The Daoen Defendants have thus still not been served the full pleadings and evidence submitted against it. Nonetheless, the Daoen Defendants are appearing, moving to dissolve the TRO, and opposing the preliminary injunction.

### III. LEGAL STANDARD

#### A. Notice is *required* for a preliminary injunction.

Before granting a preliminary injunction, notice to the adverse party is required. *See* Fed. R. Civ. P. 65(a)(1); *see also Wheeler v. Talbot*, 770 F.3d 550, 552 (7th Cir. 2014); *see also Consolidation Coal Co. v. Disabled Miners of S. West Virginia*, 442 F.2d 1261, 1269 (4th Cir. 1971).

#### B. The standard for dissolving a TRO and opposing a preliminary injunction are essentially the same.

The decision to dissolve a TRO or deny a preliminary injunction both involve assessing how likely Bigfoot is to succeed on the merits and balancing the parties' and the public's respective harms. The Court must dissolve the TRO if the harm to the Daoen Defendants in maintaining the injunction, weighted by its likelihood of success, outweighs the harm to Bigfoot. *Centurion Reinsurance Co., Ltd. v. Singer*, 810 F.2d 140, 143 (7th Cir. 1987); *see also Antsy Labs, LLC v. Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No. 21 C 3289, 2022 WL 17176498, at *1–2 (N.D. Ill. Nov. 23, 2022). Similarly, to obtain a preliminary injunction,

6

Bigfoot must demonstrate that (1) it will suffer irreparable harm in the period before final resolution of its claims; (2) traditional legal remedies are inadequate; and (3) it is likely to succeed on the merits. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323 (7th Cir. 2015). Even if Bigfoot meets this high bar, the Court must then assess whether the balance of harms favors Bigfoot or the Daoen Defendants and the public.

Bigfoot alleges three causes of action against the Daoen Defendants: (1) trademark infringement and counterfeiting under 15 U.S.C. § 1114, (2) false designation of origin under 15 U.S.C. § 1125(a), and (3) violation of the Illinois Uniform Deceptive Trade Practices Act. (ECF No. 1, ¶¶ 28–43.) To prove each, Bigfoot must demonstrate that the Daoen Defendants' use of the term "Bigfoot" is likely to deceive or confuse the public as to the source of goods. *See Neopost Industrie B.V. v. PFE Intern., Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a likelihood of confusion?") (internal quotations omitted)); *see also Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994).

### C. Both nominative fair use and statutory fair use permit certain trademark uses.

There are two types of trademark fair use: nominative and statutory. "Nominative fair use" permits a company to use a trademark to identify the trademark holder's product in connection with describing its own product. *New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992); *see also* McCarthy on Trademarks and Unfair Competition, § 23:11. To establish "nominative fair use," the Daoen Defendants must show that (1) the product cannot be readily identifiable without use of the trademark; (2) only so much of the mark is used as is reasonably necessary to identify the product; and (3) the user must do nothing with the mark that would suggest sponsorship or endorsement by the trademark holder. *Id.* Although the Seventh Circuit has not addressed this defense, several courts in this District have acknowledged

its availability. *See, e.g.*, *Data Management Association International v. Enterprise Warehousing Solutions, Inc.*, No. 20 C 04711, 2020 WL 7698368, at *5 (N.D. Ill. Dec. 28, 2020) ("trademark injunctions, particularly ones involving nominative fair use, can raise serious First Amendment concerns because it can interfere with truthful communication between buyers and sellers in the marketplace" (internal quotations omitted)); *see also R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, No. 99 C 1174, 2001 WL 747422, at *5 (N.D. Ill. June 29, 2001).

A party may also prevail under the Lanham Act's statutory fair use defense under 15 U.S.C. § 1115(b)(4) by demonstrating that (1) it did not use the mark as a trademark; (2) the use is descriptive of its goods or services; and (3) it used the mark fairly and in good faith." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015); *see also SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 600 (7th Cir. 2019). The Daoen Defendants prevail under either test. Their use of the term "Bigfoot" in product listings simply describes the brands of RC vehicles for which the replacement wheels and tires are designed. This is straightforward fair use.

**IV. ARGUMENT**

    A. <u>The TRO should be dissolved and Bigfoot's Motion for Preliminary Injunction should be denied.</u>

Without complete notice and even though Bigfoot has corresponded with counsel, the Daoen Defendants are presently barred from selling their accurately described-market replacement RC parts. Due to the *ex parte* TRO, their entire Amazon businesses are frozen. And once the Daoen Defendants counsel contacted Bigfoot, they should have been promptly served and provided all case filings. Now only being served with partial documents, the Daoen Defendants are appearing and objecting to this TRO. Courts in this District have dissolved TROs in Schedule A cases under similar circumstances. *See LG Electronics Inc. et al. v. Partnerships*

8

*and Unidentified Associations Identified in Schedule A, et al.*, Case No. 1:21-cv-02600, Dkt. Nos. 35 and 68 (N.D. Ill. June 17, 2021 and July 1, 2021). And exactly this should happen here.

The *ex parte* TRO is causing concrete harms to the Daoen Defendants. This is also grounds for dissolution. *Centurion*, 810 F.2d at 143; *see also Antsy Labs*, No. 21 C 3289, 2022 WL 17176498, at *1–2. Bigfoot's Motion for Preliminary Injunction should also be denied, as it has not established a likelihood of success or irreparable harm, and the balance of harms weigh tip heavily in favor of the Daoen Defendants.

1. *Bigfoot failed to give notice under Rule 65.*

The Court should dissolve the TRO and deny Bigfoot's Motion for Preliminary Injunction because it failed to give the Daoen Defendants proper and full notice as required under Rule 65. Fed. Rule of Civ. P. 65(a)(1). *Wheeler*, 770 F.3d 550, at 552; *see also Consolidation Coal Co.* 442 F.2d at 1269. Bigfoot has not provided sealed documents relied on in its PI motion to any of the Daoen Defendants when it filed its Motion for Preliminary Injunction. Not only does this violate Rule 65, but Bigfoot offers no compelling reason for having done so, especially given that it knew the Daoen Defendants were represented by counsel and after counsel repeatedly requested service. (Ex. A-1.) Bigfoot's counsel, in fact, *refused* to provide the sealed documents it filed or serve the Daoen Defendants *on two separate occasions*. Knowing that the Daoen Defendants would accept service, Bigfoot still filed its Motion for Preliminary Injunction without providing notice beforehand. This is gamesmanship and potential abuse of the Schedule A process. As such, Bigfoot's TRO should be dissolved, and its Motion for Preliminary Injunction should be denied.

2. *Bigfoot has not demonstrated a likelihood of success against the Daoen Defendants because the use is nominative and statutory fair use.*

9

Putting the calculated lack of notice aside, if the Daoen Defendants can demonstrate that their use of the term "Bigfoot" was either type of fair use, Bigfoot cannot prevail on any of its claims. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121 (2004) ("some possibility of consumer confusion must be compatible with fair use"). The Daoen Defendants' use of "Bigfoot" is indeed both.

### a) **The Daoen Defendants' use is nominative fair use.**

In *New Kids on the Block v. News America Publ., Inc.*, the Ninth Circuit addressed a similar situation where two newspapers used the name of a popular boyband, New Kids on the Block, to conduct popularity polls about the band in its magazines. 971 F.2d at 304. The band sued the newspapers alleging trademark infringement. *Id.* The Ninth Circuit held that the newspaper's use was a variant of the classic "fair use" defense. *Id.* at 309. The court noted that whereas classic fair use involves using a trademark to describe the *defendants' own product*, "[h]ere the New Kids trademark is used to refer to the New Kids themselves." *Id.* at 308. The Ninth Circuit agreed with the newspapers that despite this distinction, this kind of use was "fair" and not actionable. The circuit court reasoned that "[w]hile plaintiffs' trademark certainly deserves protection against copycats and those who falsely claim that the New Kids have endorsed or sponsored them, such protection does not extend to rendering newspaper articles, conversations, polls and comparative advertising impossible." *Id.*

Under the circuit court's test, a use is "nominative fair use" where: (1) the product in question is not readily identifiable without use of the trademark; (2) only so much of the mark is used as is reasonably necessary to identify the product or service; and (3) the user does nothing with the mark that would suggest sponsorship or endorsement by the trademark holder. *Id.* The reasoning in *New Kids* applies with full force here. First, the Daoen Defendants need to be able

10

to accurately describe their after-market replacement parts, including what RC vehicle the products fit on. (Ex. B, ¶¶ 6 - 8, Ex. C, ¶¶ 6–8, and Ex. D, ¶¶ 6–7.) If they cannot tell their customers that their replacement parts work with Bigfoot RC vehicles, customers with Bigfoot RC vehicles are *de facto* excluded from the Daoen Defendants' market. Bigfoot's trademark protection does not extend to rendering accurate advertising impossible. *New Kids*, 971 F.2d at 308. Second, the Daoen Defendants only use the Bigfoot name as reasonably necessary to tell their customers that the parts fit on Bigfoot RC trucks (Ex. B, ¶¶ 6 - 8, Ex. C, ¶¶ 6–7, and Ex. D, ¶¶ 6–7), and even then they only use the word "Bigfoot" one time in plain text formatting (not the stylized logo). (*Id.*) Third, the Daoen Defendants are clear about the source of the replacement parts. For example, the HobbyPark listing identifies HobbyPark in the very first word of the listing. The only place it uses the term "Bigfoot," it is preceded by the word "for": "**Hobbypark** . . . RC Monster Truck Tires and Wheels . . . **for** 1/10 Scale RC Trucks Bigfoot." (*Id.*) There is also a link stating "Visit the Hobbypark Store" directly below the product description. (*Id.*) The Daoen Defendants have done *nothing* to suggest endorsement by Bigfoot.

The Daoen Defendants' use is thus permitted under the nominative fair use doctrine. *New Kids on the Block*, 971 F.2d at 309; *see also Hypertherm, Inc. v. Precision Products, Inc.,* 832 F.2d 697, 700 (1st Cir. 1987) (holding that a company making replacement parts "may ordinarily use the originator's trademark descriptively, that is, to identify the product that it has copied"); *see also Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969) (holding that car repair shop that used the VW trademark to describe the cars it repairs was fair use considering the repair shop did not use VW's stylized logos).

          b) **The Daoen Defendants' use is also "classic" fair use.**

11

The Daoen Defendants also use Bigfoot to describe a quality of its own products: that they fit on Bigfoot RC vehicles. This is a fair use under 15 U.S.C. § 1115. The Lanham Act describes fair use as "the use of the name, term or device charged to be an infringement is a use, otherwise than as a mark . . . which is descriptive of and used fairly and in good faith only to describe the goods or services of such party[.]" 15 U.S.C. § 1115. To prevail on a fair use defense, the defendants must show: (1) they did not use the mark as a trademark; (2) the use describes its goods or services; and (3) they used the mark fairly and in good faith. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015); *see also SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 600 (7th Cir. 2019).

The Daoen Defendants meet all three elements. First, the Daoen Defendants' do not use the Bigfoot mark as a source identifier for its own goods, making it a non-trademark use. Second, the Daoen Defendants describe its own goods and services—the fact that the replacement parts can be used with Bigfoot RC cars is a characteristic of the parts. Third, the Daoen Defendants use the mark fairly, in good faith by describing the products and avoiding any suggestion of endorsement. The Daoen Defendant's use qualifies as classic fair use.

        c) **Bigfoot has not provided any evidence of customer confusion.**

Finally, Bigfoot has not submitted, to the Daoen Defendants' knowledge, *any* evidence of customer confusion related to the Daoen Defendants' use of the Bigfoot trademark. It is Bigfoot's burden to demonstrate customer confusion by a preponderance of the evidence. *SparkNet Communications, L.P. v. Bonneville Int'l Corp.*, 385 F. Supp. 2d 965, 973 (N.D. Ill. 2005). Bigfoot's allegations are mostly "on information and belief" and clearly do not fit the Daoen Defendants' use of the Bigfoot mark. Bigfoot claims with no factual support (let alone support specific to the Daoen Defendants) that "the Defendants' Internet Stores [] were offering for sale, selling, and importing counterfeit products" (ECF No. 1, ¶ 17), that "Defendants'

Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website" (*id.* at ¶ 18), and that "Upon information and belief, Defendants deceive unknowing consumers by using the Plaintiff's BIGFOOT Trademarks without authorization" (*id.* at ¶ 20). None of these allegations come with evidence. More importantly, none of them apply to the Daoen Defendants' conduct.[2]

Again, the Daoen Defendants' listings clearly identify their own brands (HobbyPark, AllinRC, and HobbyFire) as the source of the goods, allaying any concern that customers may mistake the Daoen Defendants' products for Bigfoot branded products. (Ex. B, ¶¶ 6 - 8, Ex. C, ¶¶ 6–7, and Ex. D, ¶¶ 6–7.) Further, the HobbyPark and AllinRC product listings also eliminate any concern about confusion by explicitly stating that the replacement wheels are "**for** 1/10 Scale RC Trucks Bigfoot." (*Id.* (emphasis added).) Accordingly, Bigfoot is unlikely to prevail for the separate, independent reason that it has no evidence of actual customer confusion.

          3. *The Daoen Defendants' harm outweighs Bigfoot's speculative harm.*

As set forth above, Bigfoot's likelihood of success is low, tipping the scales towards dissolution of the TRO before even considering any harm. But this factor also conclusively weighs in favor of dissolution and denial of the PI. The Daoen Defendants' present and ongoing harm is concrete and real compared to Bigfoot's speculative harm based on general allegations.

The Daoen Defendants generate considerable revenue from sales of other products through its Amazon storefronts. (Ex. B, ¶¶ 10–12, Ex. C, ¶¶ 9–11, and Ex. D, ¶¶ 9–11.) ███ ███████████████████████████████████████████████████ (*Id.*) This revenue is generated from sales of, not only the wheels and tires at issue in this case, but of many

---

[2] To the Daoen Defendants' knowledge, the only "evidence" Bigfoot submitted regarding the Daoen Defendants appears to be an exhibit attached to the Trent Declaration, purported to be "copies of screenshot printouts showing the active Defendant Internet Stores." (Trent Declaration, ECF No. 11-1, ¶ 10.) The Daoen Defendants have not been able to review that exhibit, however, because it is sealed and Bigfoot has refused to provide it. (Ex. A-1)

13

other after-market replacement RC parts. (*Id.*) █████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ (*Id.*) Yet the TRO has frozen *all* of the Daoen Defendants' revenues, whether or not the sales were at issue in this case. (*Id.*)

The relatively small sales of the wheels and tires at issue in this case has led to an Amazon freeze on the Daoen Defendants' entire business. This has and will continue to harm and impede the Daoen Defendants' ability to operate their businesses without interruption. (*Id.*) As the Daoen Defendants continue to operate their business and fill orders for other products and listings not at issue in this case, they continue to generate expenses, for which the Daoen Defendants need access to their funds to be able to pay. (*Id.*) The harm this TRO has inflicted will continue to mount with each day it is in effect. (*Id.*)

On the other hand, Bigfoot's delay of five years[3] in bringing this lawsuit against the Daoen Defendants rebuts any presumption of irreparable harm. *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 953 (N.D. Ill. 2018) (finding no irreparable harm where plaintiff waited 18 months to bring trademark infringement claim). With the presumption of harm rebutted, Bigfoot is left with speculative allegations that fall well short of the irreparable harm standard. *CF Entertainment, Inc. v. Nielsen Company (US), LLC*, No. 20-cv-2393, 2020 WL 3892988, at *12 (N.D. Ill. July 10, 2020) (finding no irreparable harm where "the showing of alleged harm is too insubstantial, non-specific, and speculative to justify injunctive relief"). For example, Bigfoot argues that its reputation and goodwill will be harmed, but it provides zero factual support for the proposition that the Daoen Defendants' replacement wheels and tires are inferior products. (ECF No. 11, PageID #74.) Bigfoot also submits unfounded "upon information

---

[3] https://www.amazon.com.au/Hobbypark-Wheels-Spokes-Inserts-Monster/dp/B075C34QBD

14

and belief" allegations suggesting that the Daoen Defendants will "hide or dispose of [their] assets" because they hold them in China. (*Id.* at PageID #81.) This is baseless, purely speculative, and insufficient to establish irreparable harm. *CF Entertainment*, No. 20-cv-2393, 2020 WL 3892988, at *12. For these reasons, the Daoen Defendants respectfully request that the Court dissolve the TRO and deny Bigfoot's Motion for Preliminary Injunction.

      B. <u>The $10,000 bond should be increased to account for the Daoen Defendants' funds subject to an unlawful seizure claim.</u>

If the Court denies the Daoen Defendants' motion to dissolve or it grants Bigfoot's Preliminary Injunction Motion, Bigfoot requests that this Court increase the bond from $10,000 to $1,000,000. The Daoen Defendants are entitled to a bond that would cover damages it may incur if it is later determined that Bigfoot was not entitled to an injunction. *Blumenthal v. Merril Lynch, Pierc, Fenner & Smith, Inc.*, 910 F.2d 1049, 1055 (2d Cir. 1990). Given the Daoen Defendants' average monthly income are approximately ▮▮▮▮▮, and it is unclear how long this case will last, the $10,000 bond is well-short of covering the potential harm. Courts in this District have increased the bond in a Schedule A case to over $400,000 under similar circumstances. *KTM v. [Schedule A Defendants]*, Case No. 1:20-cv-07212, ECF No. 137 (N.D. Ill. 2021).

## V. CONCLUSION

Bigfoot failed to give full notice of the Preliminary Injunction Motion—this alone warrants denying Bigfoot's motion. Moreover, Bigfoot's *ex parte* TRO and Motion for Preliminary Injunction are both based on meritless arguments with no factual support. Accordingly, the Daoen Defendants request that the Court dissolve the TRO, deny the PI and if necessary, allow supplemental briefing after the Daoen Defendants have had an opportunity to review the sealed documents.

Respectfully Submitted,
*/s/ Yizhou Liu*
Yizhou Liu (0093842)
bliu@calfee.com
CALFEE, HALTER & GRISWOLD LLP
1405 East Sixth Street
The Calfee Building
Cleveland, Ohio 44114
Phone: 216-622-8432
Fax: 216-241-0816
E-Mail:

*Attorney of Record for Shenzhen Daoen Model Technology Co., Ltd., Shenzhen Aoxinfa Technology Co., Ltd., and Shenzhen Tianqinli Technology Co., Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system on this 29th day of December 2022 and served via electronic delivery to Plaintiff's counsel of record.

*/ / Yizhou Liu*
*Attorney of Record for Daoen Defendants*