IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BIGFOOT 4x4, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:22-cv-06758 |
| ) | |
| THE INDIVIDUALS, ) | Magistrate Judge Jeffrey T. Gilbert |
| CORPORATIONS, LIMITED ) | |
| LIABILITY COMPANIES, ) | |
| PARTNERSHIPS, and ) | |
| UNINCORPORATED ) | |
| ASSOCIATIONS IDENTIFIED ON ) | |
| SCHEDULE A HERETO, ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants Shenzhen Daeon Model Technology Co., Ltd., Shenzhen Aoxinfa Technology Co., Ltd., and Shenzhen Tianqinli Technology Co., Ltd. (collectively, the "Daeon Defendants") request that Plaintiff Bigfoot 4x4, Inc. ("Plaintiff") produce an unredacted version of an agreement between Plaintiff and New Alchemy (the "Agreement"). The Court previously ordered Plaintiff to produce the Agreement and did not say it could be produced with redactions. [ECF No. 179]. After Plaintiff produced the redacted Agreement, the parties filed dueling Status Reports highlighting that dispute. [ECF Nos. 196, 197]. The Court effectively treated the Daeon Defendants' Status Report [ECF No. 196] as a motion to compel and ordered the parties to brief the issue. [ECF No. 198]. For the reasons discussed below, the Daeon Defendants' request to compel production of the unredacted Agreement is granted.

**Background**

The Court incorporates by references its prior Order compelling Plaintiff to produce certain documents related to New Alchemy, a company that Plaintiff works with in its efforts to protect its trademarks. Memorandum Opinion and Order [ECF No. 179] ("MOO"). In that Order, the Court held "Plaintiff has failed to meet its burden to establish that the attorney client privilege or work product protection applies to all New Alchemy communications and documents" and ordered Plaintiff to produce "agreements between New Alchemy and Plaintiff, and communications

1

between New Alchemy and Plaintiff such as weekly and monthly reports." [*Id.*] Plaintiff produced its Agreement with New Alchemy but it redacted the financial terms. Status Report [ECF No. 196]. Nothing in the Court's order permitted Plaintiff to produce the document in redacted form.

The Daeon Defendants contend the financial terms of the Agreement are relevant to their abuse of process counterclaim because they "may shed light on whether there was some financial incentive for maximizing the volume of defendants at the cost of doing a proper pre-suit investigation." Status Report [ECF No. 196] at 2-3. Plaintiff argues the Agreement "is a protected communication under the work product doctrine, is subject to attorney-client privilege and is considered a trade secret." Plaintiff's Response to Defendants' Request to Produce Unredacted Agreement for Services [ECF No. 204] ("Response") at 1. Plaintiff also contends the Agreement is "irrelevant to Defendants' claims of non-infringement and its baseless claim of abuse of process." [*Id.*]

## Analysis

### 1. Plaintiff Fails to Demonstrate the Financial Terms are Protected Work Product.

Plaintiff first argues the "payment terms"[1] of its Agreement are protected work product. Response [ECF No. 204] at 4. Plaintiff says the Agreement was created for the purpose of litigation because New Alchemy is "the representative and investigator of Plaintiff's counsel" and "conducted searches for infringers of Plaintiff's trademarks and reported those findings to Plaintiff's counsel to enable Plaintiff to file suit." [*Id.*] at 5. Plaintiff also says it has filed 21 cases in this District using New Alchemy as its investigator. [*Id.*] at 7.

Plaintiff fails to adequately support its assertion of work product protection for the financial terms of the Agreement. Plaintiff, and not Plaintiff's counsel, entered into the Agreement with New Alchemy. *See* Response [ECF No. 204] at 5 (describing the Agreement as "between [Plaintiff] and the representative and investigator of Plaintiff's counsel, New Alchemy"). Although Plaintiff says New Alchemy "conducted searches for infringers of Plaintiff's trademarks and reported those findings to Plaintiff's counsel to enable Plaintiff to file suit," [*id.*] at 5, the Court previously found

---

[1] In the Response, Plaintiff refers to the redacted terms of the Agreement in various ways (*e.g.*, "payment terms"; "compensation information"; "financial information"; and "financial terms"). The Court will refer to the redacted information as the "financial terms" of the Agreement.

that Plaintiff's characterization of the relationship between New Alchemy and Plaintiff's counsel was not entirely consistent with the record before the Court on the prior motion to compel. MOO [ECF No. 179] at 14-15. Specifically, the extent to which Plaintiff's counsel relied on New Alchemy's investigations or how New Alchemy or Plaintiff's counsel made litigation decisions was unclear, including as to settlements with defendants that Plaintiff sued. [*Id.*] The Court found "[b]ased on this record, the extent to which Plaintiff's counsel makes litigation decisions based on information provided by New Alchemy, as Plaintiff's conclusory argument goes, is far from clear." [*Id.*] Plaintiff does not support its current description of New Alchemy as "the representative and investigator of Plaintiff's counsel" with any additional evidence that changes the Court's view. The Court is confident Plaintiff would have submitted such evidence if it exists, particularly in light of the Court's last order. [*Id.*]

Moreover, even if the Court were to credit Plaintiff's claim that New Alchemy is Plaintiff's counsel's trademark investigator, Plaintiff does not present evidence or legal authority supporting its position that the redacted financial terms in the Agreement are protected work product. Under Rule 26(b)(3)(B), protected work product includes "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative during the litigation." Fed. R. Civ. Proc. 26(b)(3)(B). Plaintiff does not explain how these financial terms, which appear to address the payment or compensation due to New Alchemy for its services, constitute the "mental impressions, conclusions, opinions, or legal theories" of its attorneys. *See Cnty. of Cook v. Wells Fargo & Co.*, 2021 WL 809730, at *1–2 (N.D. Ill. Mar. 3, 2021) (granting motion to compel agreements with consulting experts, noting the plaintiff "does not seek to discover 'facts known or opinions held by' the two consulting experts . . .; rather, it seeks only to discover their consulting agreements with Wells Fargo.") (internal citations omitted).

Accordingly, the Court finds the financial terms of the Agreement are not protected work product. It therefore was improper to redact for work product those terms from the Agreement Plaintiff produced to the Daeon Defendants.

## 2. Plaintiff Fails to Demonstrate the Financial Terms are Privileged Attorney Client Communications.

Plaintiff acknowledges that retainer agreements and fee arrangements are not typically considered attorney client privileged information. Response [ECF No. 204] at 7 (citing *Stopka v. Am. Fam. Mut. Ins. Co.*, 816 F. Supp. 2d 516, 532–33 (N.D. Ill. 2011); *see also Stopka*, 816 F. Supp. 2d at 532–33 (describing "federal rules" regarding production of retention agreements as "[g]enerally, such agreements are not covered

by the attorney-client privilege unless they disclose confidential communications between the parties who have executed the agreement."). "Whatever line of analysis a court takes, . . . the focus must always remain on whether confidential legal advice is revealed in a document." *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 537 (N.D. Ill.), *on reconsideration in part*, 194 F.R.D. 624 (N.D. Ill. 2000). Although Plaintiff relies on *Smithkline Beecham* for the proposition that "*if* the retainer agreement contains legal advice or strategy, it can be held to include privileged information," Plaintiff fails to explain why the financial terms of the Agreement constitute or contain legal advice or strategy. Response [ECF No. 204] at 7 (emphasis added).[2]

Plaintiff also cites *Lucas v. Gold Standard Baking*, 2017 WL 3394726, at *3 (N.D. Ill. Aug. 8, 2017), but this case does not support its assertion of privilege over the financial terms of this Agreement. In *Lucas*, the court reviewed a retainer agreement *in camera* and concluded certain information as to the scope of representation and the agreement date were relevant and not privileged, but other information in the agreement was either privileged or not relevant. As relevant to the analysis here, the reason the court found parts of the agreement to be privileged in that case was "because it includes prosecution strategy not related to this case." *Id.* Plaintiff, however, does not explain why the financial terms of this Agreement are analogous to the prosecution strategy information the court in *Lucas* found to be privileged.[3]

For all these reasons, the Court finds Plaintiff has not shown the financial terms of the Agreement are an attorney client privileged communication.

---

[2] Plaintiff also cites *Simon v. Northwestern University*, 2017 WL 66818, at *4 (N.D. Ill. Jan. 6, 2017) for the proposition that under Illinois law, the privilege extends to confidential communications made to investigators employed by an attorney. As an initial matter, Plaintiff does not address whether federal or Illinois law applies to the privilege analysis in this case, which involves both federal and state claims. *See* Fed. R. Evid. 501 (federal common law of privilege applies in cases arising under federal laws "[b]ut in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). Moreover, as discussed above, the record may not support that Plaintiff's counsel employs New Alchemy, and it is Plaintiff, not Plaintiff's counsel, that entered into the Agreement with New Alchemy. In any event, even if the Court credits Plaintiff's description of New Alchemy as "the investigator of Plaintiff's counsel," Plaintiff has not shown the financial terms reflect confidential communications seeking legal advice.

[3] To the extent Plaintiff suggests *Lucas* holds the financial terms of the Agreement are not relevant, that argument also falls short as *Lucas* did not involve an abuse of process claim like the Daeon Defendants' counterclaim here.

### 3. **Plaintiff Fails to Demonstrate the Financial Terms are Trade Secrets.**

Plaintiff's argument that the financial terms constitute a trade secret also fails to carry the day. As an initial matter, trade secrets and other confidential information are not *per se* barred from disclosure in discovery. Rather, Rule 26(c)(1)(G) provides that a court may "for good cause" bar disclosure of a trade secret or other confidential information "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1)(G). Plaintiff asserts the disclosure of this information would "put Plaintiff's counsel and [New Alchemy] at an economic disadvantage" and would "injure current and future business relationships with other clients," but Plaintiff does not present any evidence in support of this claim. Even if true, Plaintiff's arguments might justify production of the Agreement subject to the confidentiality order previously entered in this case but not the wholesale redaction of potentially relevant information. *See* Agreed Protective Order [ECF No. 119] entered on August 3, 2023.

Plaintiff speculates about the motivations of the Daeon Defendants' counsel in seeking this information, pointing to other cases in this District where Plaintiff says the Daeon Defendants' counsel has appeared on behalf of plaintiffs in Schedule A cases to suggest counsel is starting a "newly developed business plan of prosecuting 'Schedule A' cases in the Northern District of Illinois." Response [ECF No. 204] at 11-12. In the Court's view, such speculation does not demonstrate good cause for entry of a protective order barring disclosure of the financial terms in the Agreement. If the information is relevant and discoverable for some purposes, as the Court finds it may be, then it does not matter that it may be irrelevant for other purposes.[4]

---

[4] Plaintiff also argues the financial terms meet the statutory definition of a trade secret in the Defend Trade Secrets Act, Response [ECF No. 204] at 11 (citing 18 U.S.C. § 1839(3)(A-B), (4)). The Court need not decide that question because Plaintiff has not shown a reason why this information, whether deemed a trade secret or other confidential information, should be barred from disclosure under Rule 26(c)(1)(G). Nevertheless, the Court notes Plaintiff presented no evidence supporting its claim that this information is a trade secret, and the Court is not convinced that merely redacting this information from the Agreement for purposes of discovery is sufficient to demonstrate that Plaintiff "has taken reasonable measures to keep such information secret."

5

### 4. Plaintiff Fails to Establish the Daeon Defendants' Request for the Financial Terms in the Agreement is "Pretextual" and Not Proportionate to the Needs of the Case.

Finally, Plaintiff argues the financial terms of the Agreement are not relevant to the Daeon Defendants' abuse of process counterclaim and the Daeon Defendants' request for this information is pretextual. The Daeon Defendants argue the financial terms are relevant because "the financial arrangement between New Alchemy and Bigfoot (and their systemic Schedule A scheme) likely encourages amassing voluminous defendants, procuring TROs on baseless allegations, and using those TROs to leverage settlements not tied to the merits of the case but rather by bullying small online shops faced with the Hobson's choice of spending exorbitant legal fees defending the case or settling for a nominal amount to unfreeze their shops and continue business." Defendants' Reply to Plaintiff's Response to Defendants' Request to Produce Unredacted Agreement for Services [ECF No. 206] ("Reply") at 7-8.

There are two elements of an abuse of process counterclaim under Illinois law: "(1) the existence of an ulterior motive or purpose; and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *See CNTRST Debt Recovery v. Ybarra*, 2024 WL 1435099, at *8 (N.D. Ill. Apr. 2, 2024) (internal citations omitted). The Daeon Defendants say the first element requires facts showing "the [counterclaim] defendant instituted proceedings . . .for an improper purpose, such as extortion, intimidation, or embarrassment." [*Id.*] As to the second element, the Daeon Defendants say Plaintiff's practice of "[p]rocuring TROs is the kind of 'process' contemplated by an abuse of process claim," citing *Gao v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 2022 WL 1028926, at *6–7 (N.D. Ill. Apr. 4, 2022).

Plaintiff focuses on whether the financial terms are relevant to the second element of Defendants' counterclaim. Plaintiff does not effectively dispute, however, that the financial terms may be relevant to the first element of the Daeon Defendants' claim – whether Plaintiff had an ulterior motive in pursuing its claims against the Daeon Defendants. While Plaintiff asserts its "motivation for including the Defendants in the present suit is to protect its intellectual property rights," Response [ECF No. 204] at 13, Plaintiff's characterization of its motivation for bringing this lawsuit is not dispositive of whether Plaintiff had, or also may have had, an ulterior motive or purpose as the Daeon Defendants allege. That is Plaintiff's side of the argument, but the Daeon Defendants are allowed, within reason as they are doing here, to pursue their arguments as well with discovery that is relevant and proportional to the needs of the case. *See Doe v. Loyola Univ. Chicago*, 2020 WL

406771, at *2 (N.D. Ill. Jan. 24, 2020) ("Because the purpose of discovery is to help 'define and clarify the issues,' relevance is to be construed broadly. . . 'If relevance is in doubt, courts should err on the side of permissive discovery.'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) and *Wiginlon v. CB Richard Ellis, Inc.*, 229 F.R.D. 568. 577 (N.D. Ill. 2004)). In the Court's view, the financial arrangement between Plaintiff and its investigator may be relevant to the Daeon Defendants' theory that Plaintiff's financial arrangement with its investigator created a situation in which it was to their mutual benefit to cast a wide net that would ensnare non-infringing defendants in a potentially meritless lawsuit from which they could extricate themselves only by paying a hefty ransom. Accordingly, the Court cannot agree with Plaintiff that the financial terms of the Agreement are not relevant to at least the first element of an abuse of process claim. *See* Reply [ECF No. 206] at 7-8.[5]

Moreover, Plaintiff's argument that requiring disclosure of the financial terms is not proportionate to the needs of the case is not persuasive. As noted above, Plaintiff speculates the Daeon Defendants are seeking this information to support their attorneys' purported burgeoning business of filing Schedule A cases. Response

---

[5] Although the Daeon Defendants cite *Gao, supra,* in support of their position, the case appears to be distinguishable from the situation at hand here. But that does not change the Court's view that the financial terms of the Agreement are potentially relevant to the first element of the Daeon Defendants' counterclaim. In *Gao*, 2022 WL 1028926, at *6–7, the court dismissed an abuse of process claim because seeking TROs to freeze accounts was an available legal process for the plaintiff's claims in that case. Therefore, the defendants failed to allege facts supporting the second element of an abuse of process claim, namely, "that Plaintiff committed some act in the use of legal process not proper in the regular prosecution of the proceeding." [*Id.*]. The *Gao* decision, which was decided at the pleading stage, does not address what evidence might be relevant to the first element of an abuse of process claim. *See Gao*, 2022 WL 1028926, at *7 (citations omitted).

Furthermore, while Plaintiff suggests "Defendants' abuse of process claim is meritless" because the Daeon Defendants fail to identify facts supporting the second element of that claim, Response [ECF No. 204] at 13, Plaintiff did not move to dismiss the counterclaim, and the Court is not deciding the viability of that claim on this discovery motion. Moreover, the counterclaim contains other allegations, including that Plaintiff withheld information from Defendants and delayed sharing with Amazon information regarding the expiration of the TRO against the Daeon Defendants. *See* Answer to Defendant's Counterclaim [ECF Nos. 53, 54, 55]. The parties do not address whether these allegations suffice to satisfy the second element of an abuse of process claim: "some act in the use of legal process not proper in the regular prosecution of the proceedings." *See CNTRST Debt Recovery*, 2024 WL 1435099, at *8 (internal citations omitted). Regardless, however, as explained above, the information Plaintiff is seeking is relevant to the first element of the Daeon Defendants' counterclaim and the ultimate merit of the Daeon Defendants' counterclaim is not before the Court at this time.

[ECF No. 204] at 9-10 ("The compensation information in the Agreement is apparently important to counsel for Defendants' and not to its clients."); [*id.*] at 11 ("Defendants' counsel seeks the disclosure of compensation information to formulate or refine its newly developed business plan of prosecuting 'Schedule A' cases in the Northern District of Illinois"). In the Court's view, Plaintiff's supposition about the Daeon Defendants' motivations in seeking an unredacted version of the Agreement do not show that the Daeon Defendants' request for this information is "pretextual." [*Id.*] at 12-14.

In addition, Plaintiff does not articulate any burden or harm to Plaintiff from disclosing the financial terms. Rather, Plaintiff seeks to withhold this financial information to avoid providing "Defendants' counsel with an economic advantage" and putting "Plaintiff's counsel and the investigator [New Alchemy] at an economic disadvantage." Response [ECF No. 204] at 11-12. *see also* [*id.*] at 11-12 (arguing disclosure of the financial terms "would undermine the current and future business relationships between Plaintiff's counsel and New Alchemy"). The Court is not persuaded that Plaintiff's concerns about the financial interests of the parties' respective attorneys or a third-party trademark investigation company are relevant to whether disclosure of the financial terms is proportionate to the needs of this case. The Court concludes the Daeon Defendants have demonstrated some potential relevance of the financial terms of the Agreement to the abuse of process counterclaim and Plaintiff has not shown this disclosure is disproportionate to the needs of the case or otherwise unduly burdensome.

## Conclusion

For all these reasons, the Daeon Defendants' request in its Status Report and subsequent brief in support of that request, *see* [ECF Nos. 196, 206], to compel production of the unredacted Agreement between Plaintiff and New Alchemy is granted. Plaintiff shall produce the Agreement within seven (7) days of the date of this Order. Plaintiff can produce the unredacted Agreement subject to the Agreed Protective Order previously entered in this case. [ECF No. 119].

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 18, 2024